## CLARK v. CITY OF ATHENS et al.
(No. 962.)

(Court of Civil Appeals of Texas. Beaumont. May 7, 1923. Rehearing Denied June 13, 1923.)

1. Trial ⟨⟩352(4)—Refusing tendered issue of negligence as to negligence on maintaining guidepost in street not error.

In action for injuries to plaintiff's decedent from colliding with a traffic marker or guidepost on a public street, where there was no issue tendered in the petition as to negligence in maintaining such guidepost in the street, there was no error in refusing such tendered issue, regardless of the state of evidence touching it.

2. Trial ⟨⟩350(6)—Issue of negligence tendered by special issue held not raised by evidence.

In action for injuries to plaintiff's decedent from colliding with a traffic marker upon a public street, where there was no evidence showing width of the streets, nor that there was not ample room on either side of the guidepost for accommodation of ordinary traffic on the street, the tendered issue as to whether the post was such as a person of ordinary prudence would not have kept there was not raised.

3. Municipal corporations ⟨⟩661(2)—Municipality allowed latitude in exercise of police power in regulating traffic.

Municipality must of necessity be permitted reasonable latitude in the exercise of police powers, one of which is to prescribe and enforce rules and means touching the control and regulation of traffic on their streets as in the judgment of municipal authorities are reasonably calculated to advance and protect the public in the proper use thereof.

4. Municipal corporations ⟨⟩763(1)—Municipality required to use ordinary care to make public streets safe for ordinary use.

Municipalities are required to use ordinary care in construction and maintenance of streets to the end that the public in making ordinary use thereof may not be exposed to danger that the municipality may obviate by the use of such care, but are not required to anticipate or foresee dangers that are not threatened to those making proper and ordinary use of streets.

Appeal from District Court, Henderson County; W. R. Bishop, Judge.

Action by Mrs. L. L. Clark against the City of Athens and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Miller & Miller, of Athens, for appellant. E. A. Landman, of Athens, and A. D. Lipscomb, of Beaumont, for appellees.

HIGHTOWER, C. J. The appellant, Mrs. L. L. Clark, filed this suit in the district court of Henderson county for herself and as next friend of her infant daughter, Plenny Irene Clark, against the city of Athens and F. R. Blakeney, seeking to recover damages in consequence of the death of P. S. Clark, who was the husband of plaintiff and the father of her infant daughter, it being alleged that Clark's death was caused by the concurrent negligence of the city of Athens and said Blakeney, but that, if not by such concurrent negligence, then the death was caused solely by the negligence of the defendant city of Athens.

Both defendants answered, the defendant city interposing general demurrer and general denial, and specially pleading contributory negligence on the part of deceased, and also that the sole cause of his death was negligence on the part of Blakeney.

The trial with a jury resulted in a judgment in favor of both defendants, and plaintiff has appealed, presenting three assignments of error under which it is contended the judgment should be reversed and the cause remanded. These three assignments together present but one question for our decision, and that is as to whether the trial court should have submitted for the jury's consideration, as a question of fact, whether the defendant city was guilty of negligence in permitting a certain guidepost or traffic marker to be placed and to remain at a point about the center of the intersection of two of the city's public streets at the northeast corner of the courthouse square, which square is about in the center of the city limits.

We shall first state the substance of the evidence, which shows how the injury resulting in the death of Clark was sustained. On the day of the occurrence, the deceased and his brother-in-law, F. R. Blakeney (Mrs. Clark's brother), had gone to a ball game a few miles east of the city of Athens and they returned to the city that evening, reaching there about dark. They were riding in an automobile belonging to Blakeney, and he was driving the car. Just before they reached the courthouse square, traveling west, one Bruce Wallace came into the street ahead of them, traveling in the same direction. The Blakeney car remained in the rear of the Wallace car until Wallace had reached a point in the street about opposite the northeast corner of the courthouse square. At this point, according to Blakeney's testimony, it appeared to him that Wallace's car was about to stop, and to keep from striking Wallace's car, Blakeney suddenly steered his car to Wallace's left, with a view to passing him; and in going around the Wallace car, Blakeney's car, as he testified, came in contact with an iron bar which extended out about 15 inches from the top of the guidepost. Blakeney testified that this iron bar came in contact with deceased, who lived only a short while thereafter. He further testified that

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

it was dark and raining at the time, and that there was no light on his car, and that he did not see the iron bar before coming in contact with it, because the cement covering which had at one time been on the bar had been knocked off or in some manner removed, and that, the bar being thus exposed, its color was such that it was difficult to see it.

The undisputed evidence shows that the guidepost in question was placed in the street on the advice and at the request of the grand jury of the county, as a means tending to the regulation of traffic on the streets at that point; and, upon the same advice and request, guideposts of the same or like kind were placed in the street at each corner of the courthouse square. These posts are made of cement and are about 15 inches square, about 3½ feet in height, and are firmly set in the ground. At or near the top of the posts crossarms are placed, and these arms extend from each side of the post to a length of about 14 inches, so that one arm points north, one east, one south, and one west. The arms are also made of cement, reinforced by iron, and, if we mistake not the record, are about 6 inches square. Upon these arms appears the sign or signal, "Drive to the Right."

The record is silent as to the width of the streets at the points where the guideposts are placed, and there is nothing in the record to show that there is not ample room on either side of the guideposts for the accommodation of ordinary traffic upon the streets. Indeed, there seems to have been no inquiry or issue made on the point in the trial of the case. On the contrary, the fight below seems to have been made on the issue, affirmed by the plaintiff and denied by defendant city, as to whether defendant city was guilty of negligence proximately causing Clark's death in permitting the iron bar with which he came in contact to be exposed. All the inquiry appears to have been directed to this point. The trial court evidently so understood the controversy, both as to the pleadings and the evidence.

The special issues submitted were:

(1) "Was the cement knocked off this iron bar before the day on which the injury occurred?"

(2) "Did the officers of the city of Athens know prior to the time of the injury that the cement was knocked off said iron bar?"

(3) "How long had the cement been knocked off prior to the injury?"

(4) "If you state that the officers of the city did not know that the cement was knocked off prior to the injury, then would an ordinarily prudent person situated as the said officers were have known prior to the time of the injury that the cement had been knocked off said iron bar?"

(5) "If you answer No. 2 in the affirmative, then would an ordinarily prudent person situated as said officers were have removed said iron bar prior to the injury?"

The jury was instructed that in the event they should answer the first question in the negative, they need not answer questions Nos. 2, 3, 4, and 5. The jury answered the first question in the negative and made no answer to the others, as instructed.

The jury also, in answer to further questions, acquitted Blakeney of any negligence. Other answers become immaterial.

Before the court's charge was given to the jury, counsel for plaintiff presented and requested the following issue:

"Was said post, if all the cement remained on its arms, such as a person of ordinary prudence would not have kept there?"

The court refused the issue, and the point was saved by proper exception. It will be observed that it was sought by this requested issue to have submitted for the jury's consideration whether the mere presence of the guidepost in the street at the point of the accident, regardless of whether one of its arms was exposed, constituted negligence on the part of defendant city.

[1] After careful consideration of appellant's assignments, in connection with the record, we have concluded that the court was not in error in refusing the tendered issue. We have reached this conclusion for two reasons, the first of which is that there was no basis in the plaintiff's petition for the submission of the requested issue. As we construe the plaintiff's petition, it does not allege that the mere presence of the guidepost in the street at the point of the accident constituted negligence on the part of the city which proximately caused Clark's death. True, the petition does allege, in substance, that the post constituted a dangerous obstruction in the street, and that persons were likely to come in contact with it and be injured or killed; but, as we read the petition carefully as a whole, it is nowhere alleged that the presence of the post in the street, separately and apart from the exposed iron bar which reinforced one of the arms, was negligence on the city's part which proximately caused Clark's death. The petition is somewhat at length, and, while it mentions the presence of the post in the street a number of times, yet the allegations in that connection each time wind up by attributing Clark's death to the exposed condition of the iron bar which he was unable to see at the time of the injury, and this is clearly shown to have been the cause of his death. There was a great array of witnesses introduced by both parties upon this point, and the whole fight was made upon the issue whether or not the iron bar had become exposed prior to the injury, and whether this was or ought to have been known by the city officials.

If we are correct in our construction of the petition, then it follows that there was

no error in refusing the tendered issue, regardless of the state of the evidence touching it, for it is well settled in this state that negligence not pleaded, though proved, will not afford a basis of recovery.

[2, 3] We are also of the opinion that the evidence was not sufficient to raise and sustain the tendered issue had it been given. As we have stated above, this guidepost or traffic marker had been placed where it was for the very purpose of regulating and directing traffic upon the public street and as a means of precaution and safety to the public in the ordinary and proper use of the street; and there was no evidence, as we have stated, showing the width of the streets at the point in question, nor was there any tending to show that there was not ample room on either side of the guidepost for the accommodation of the ordinary traffic upon the street. This being so, we are of the opinion that the issue of negligence tendered by the special issue was not raised. Municipalities must, of necessity, be permitted reasonable latitude in the exercise of their police powers, one of which is the power to prescribe and enforce such rules and means touching the control and regulation of traffic upon their public streets as in the judgment of the municipal authorities are reasonably calculated to advance and protect the interests and welfare of the public in the proper use of the streets. Whitfield v. City of Paris, 84 Tex. 431, 19 S. W. 566, 15 L. R. A. 783, 31 Am. St. Rep. 69; Givins v. City, 5 Tex. Civ. App. 705, 24 S. W. 974; Rivers v. City, 65 Ga. 379, 38 Am. Rep. 787; Dillon on Municipal Corporations (5th Ed.) c. 23, §§ 970, 974 to 977; Conway v. City of Beaumont, 61 Tex. 12; 29 C. J. 714.

[4] It is true that municipalities are required to use ordinary care in the construction and maintenance of their public streets to the end that the public in making ordinary use of the streets may not be exposed to dangers that the municipality may obviate by the use of such care, but they are not required to use any higher degree of care, nor to anticipate or foresee dangers that are not threatened to those making proper and ordinary use of the streets. City of Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667.

For the reasons just indicated, we are of the opinion that the trial court was not in error in declining to submit the issue tendered by the plaintiff as to whether the presence of the guidepost or traffic marker, of itself and independent of the exposed condition of one of the arms, constituted negligence on the part of the city. This, in effect, disposes of all assignments, and it results that the judgment should be affirmed, and it has been so ordered.