## CITY OF TERRELL v. HOWARD.
### No. 11709.

Court of Civil Appeals of Texas. Dallas.
June 15, 1935.

Rehearing Denied July 13, 1935.

Morris Brin, M. F. Cate, and Bond & Porter, all of Terrell, for appellant.

Bumpass & Killough, of Terrell, for appellee.

JONES, Chief Justice.

In a suit in the district court of Kaufman county, by appellee, James R. Howard, to recover damages against appellant, the city of Terrell, for personal injuries resulting from appellee's falling into an unprotected ditch in North Francis street of said city, appellee recovered judgment and his damages were assessed at $3,500.

The appeal has been duly perfected to this court, and the following are the facts:

Appellee was an employee of the Janelli Advertising Service, with offices in the city of Dallas. From such offices this company sent out crews in a truck, to towns and cities in the surrounding country, to distribute circulars advertising the business of its customers. The members of the crew would make a house-to-house canvass for the distribution of such circulars. On October 31, 1932, the crew to which appellee had been assigned, had gone out early Saturday morning, had worked a number of towns, arriving at Terrell about 8 p. m., and immediately began their work of distributing the advertising matter. Two of the crew would make the same street, one working each side. On the occasion in question, Joe Adair was appellee's working partner, and after making two or three streets, they began at the north end of North Francis street, appellee taking the east or left-hand side of the street, and Adair taking the west or right-hand side, going south toward appellant's main business street. Appellee and his working partner had never been in appellant city before, and were unacquainted with its streets and their condition. North Francis street is paved, the pavement being approximately 50 feet wide from curb to curb, the street, however, being from 15 to 20 feet wider from property line to property line. There was, therefore, a rather wide space on each side of the street between the sidewalk and the curb line of the pavement. This portion of each side of the street is described as a parkway.

Heath street runs east and west and intersects North Francis street; it is a graded and graveled street. Elm street extends east and west and is one block north of Heath street. There is a natural waterway or branch that runs in a southeasterly direction through the northwest part of appellant city, and is used by appellant for drainage purposes. This waterway or ditch comes into North Francis street at the southwest corner of Elm and Francis streets, and for a block extends south on the west side of Francis street to the northwest corner of Heath and Francis, where it angles across Francis street to the southwest corner of Francis and Heath, then extends east. The paving on Francis street passes over the ditch, but where the paving ends on the east side of Francis, it

is open, is approximately 5 feet deep and 10 feet wide, with perpendicular banks that are held in place by concrete walls. The night of October 31, 1932, is described as being very dark.

The ditch, after it emerges from under the Francis street paving, is in the direct path of one traveling south on the east side of Francis street as he crosses the intersection of Heath and Francis streets. There are two concrete posts, connected by two or three arms, to protect vehicles and persons traveling on the pavement on the east side of Francis street. There is no protection from the ditch of any kind for one crossing Heath street from the east side of Francis street, while proceeding south on the sidewalk on the east side of Francis street, except at such street corner the city has a street electric light. There is no improved sidewalk on the east side for two blocks of Francis street immediately adjacent to the ditch after it emerges from the pavement. This street light is constructed so that it can only be turned on and off at the light pole.

A Mr. Bennett conducts a filling station on the east side of Francis street, in the immediate vicinity of this ditch, and has been turning the light on in the evening and turning it off in the morning, but he has no employment or agreement with appellant to do such work, and only does it as a volunteer, perhaps to give himself the benefit of the light, as well as the traveling public. When he attempted to turn on the light, on the evening of October 31, 1932, he discovered that it would not burn, but did not notify any of appellant's employees that the light would not burn, and none of appellant's employees knew that on the night in question the light was not burning.

As appellee proceeded with his work, on Francis street, crossing Heath at the intersection, and in ignorance of the existence of the ditch, he fell into such ditch and received very painful and permanent injuries. His left thigh was broken about six inches from the hip, and the bone protruded through the flesh. He called to his working partner on the other side of the street, who came and helped him out of the ditch, and then with the aid of other help he was taken in an automobile to a hospital in appellant city. Later, he was moved to Baylor Hospital in Dallas, and then was sent to his home in the city of Dallas, where he remained in bed for about

three weeks longer. The severity of the break was such that his left leg will be from three-fourths to one inch shorter than his right leg. At the time of the trial, which was in the latter part of July, 1933, he had to wear a brace over his left leg, and could not walk without the aid of a cane or crutch, and still suffered considerable pain.

The Janelli Advertising Service carried compensation insurance and appellee presented his claim before the Workmen's Compensation Board, was awarded a weekly payment of $7 and had received of such payments a total of $105, when the compensation carrier became insolvent and went into the hands of a receiver. There was at the time the suit was filed, and at the time of trial, a contest between state and federal receivers as to which would administer the insolvent estate. The compensation carrier is not a party to this suit, but appellee prayed that the sum of $105, the amount he received, be deducted from such judgment and paid into the custody of the court for the benefit of the receiver who finally administers the estate, and this sum was deducted and is in the custody of the district court of Kaufman county for such purpose.

Notice of appellee's claim, in conformity to a provision in appellant's charter, was filed with the city secretary and chairman of appellant's board of commissioners, on January 13, 1932, such notice being filed 74 days after appellee's injuries. Subsequent to the filing of this notice, but within 90 days after the injuries, appellee's counsel appeared in person before the commissioners and presented a written claim for damages because of his injuries, asking permission to file suit against appellant for damages. No action was taken on the notice of injuries filed January 13, 1932, and no action was taken on the petition presented to the commissioners in person. Appellee, soon after presenting the notice and petition to the commissioners, instituted this suit.

In October, 1913, appellant's charter was amended so as to provide: " * * * that no suit for damages for any injury to any person or property shall be brought against the City of Terrell without first obtaining the consent of the Commissioners, or a majority thereof, at a regular meeting to bring said suit. The consent to sue the City of Terrell shall not be granted, unless the party claiming the in-

jury to his person or property shall notify the Chairman of the Commission in writing within 90 days after the injury or damage, of the time, place and circumstance of the injury; provided, however, that nothing in the following shall be construed to mean that the City shall not compensate sufficiently every person suffering injury to the person or property, but it is specially ordained to be the duty of the City Commission to carefully investigate every complaint and to do justice."

Without any change in the above charter provision, there was subsequently enacted by the city commission an ordinance which declares that, "Before the City of Terrell shall be liable for damages of any kind the person injured, or someone in his behalf shall give the Chairman of the Commission or City Secretary notice in writing of such injury within thirty days after the same has been received, stating specifically in such notice when, where and how the injury occurred and the extent thereof. The City of Terrell shall never be liable on account of any damage or injury to person or property arising from or occasioned by any defect in any public street, highway or grounds, or any public work of the City, unless the specific defect causing the damage or injury shall have been actually known to the Chairman of the Commission or City Engineer by personal inspection for a period of at least twenty-four hours prior to the occurrence of the injury or damage, unless the attention of the Chairman of the Commission or City Engineer shall have been called thereto by notice thereof in writing at least twenty-four hours prior to the occurrence of the injury or damage and proper diligence has not been used to rectify the defect after actually known or called to the attention of the Chairman of the Commission or the City Engineer, as aforesaid."

Appellee's first amended original petition, on which the case was tried, pleaded the several grounds of negligence submitted by the court. Appellant filed four pleas in abatement to appellee's cause of action, on the grounds, (1) that the 30-day notice provided by ordinance, as a condition precedent to the filing of the suit, was not given; (2) that the Republic Indemnity Company carrying the workmen's compensation insurance for the Janelli Advertising Service was a necessary party to the suit, for the reason that

appellee had filed a claim with the Workmen's Compensation Board against such company, and had received partial payment thereon; (3) that appellee had elected to proceed against the Republic Insurance Company, and had recovered against such company, as compensation insurance, the sum of $7 per week, and having elected to proceed against such insured, he had waived his rights against appellant; and (4) that by appellant's charter provisions, no suit for damages shall be brought against appellant without first obtaining the consent of the commission to bring such suit, and that no consent to bring such suit was ever obtained from appellant's commission. In addition to these pleas, appellant filed an elaborate answer to the merits of appellee's case, as made by his petition.

Each of the pleas in abatement was presented to the court and overruled, appellant reserving its exception to the ruling of the court, and has duly assigned error on the court's action in respect to each of said pleas.

The case was tried to a jury, submitted on special issues, and such issues with the jury's verdict thereon are:

"Question No. 1: Do you find from a preponderance of the evidence that the plaintiff, James R. Howard, sustained personal injuries on or about the 31st day of October, A. D. 1932, by reason of falling at the time and place alleged by plaintiff? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 2: If you have answered the last preceding question 'yes,' you will answer this question; but if you have answered 'no,' then you need not answer this question: Do you find from a preponderance of the evidence that the place into which the defendant fell, if he did, and sustained injuries, if he did, was a part of a natural waterway, creek or branch running through the City of Terrell, at the time plaintiff fell, if he did, and sustained injuries, if he did? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 3: Do you find from a preponderance of the evidence that the place into which the plaintiff fell, if he did, was constructed by the defendant, City of Terrell, and allowed by the defendant to remain open as a ditch or pit in the City of Terrell. Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 4: Do you find from a preponderance of the evidence that the place into which the plaintiff fell, if he did, and sustained injuries, if he did, was situated in a public street of the City of Terrell, to-wit: North Francis Street? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 5: If you have answered the last preceding question 'yes,' then answer this question; but if you have answered 'no,' then you need not answer this question: Do you find from a preponderance of the evidence that the construction of, or the leaving open the place into which plaintiff fell, if he did, and received his injuries, if any, was negligence? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 6: If you have answered the last preceding question 'yes,' then answer this question; but if you have answered 'no,' then you need not answer this question: Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injury, if any, sustained by the plaintiff, James R. Howard, at the time and on the occasion in question? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 7: Did the defendant, its agents, servants and employes, on the night of October 31, 1932, fail to place and maintain barriers, guards, or rails at the place into which plaintiff fell, if he did? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 8: If you have answered the last preceding question 'yes' then answer this question; but if you have answered 'no,' then you need not answer this question: Did such failure (if any) to place barriers, guards or rails at the place into which the plaintiff fell, if he did, constitute negligence on the part of the defendant, according to the definition of negligence given you in this charge? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 9: If you have answered the last preceding question 'yes' then answer this question; but if you have answered 'no,' then you need not answer this question: Was such negligence (if any there was), the proximate cause (as that term has been defined to you), of the injuries, if any, sustained by plaintiff to his person? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 10: Did the defendant, on the night of October 31st, 1932, at or near the place into which the plaintiff fell, if he did, fail to have a street light burning? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 11: If you have answered the last preceding question 'yes' then answer this question; but if you have answered 'no,' then you need not answer this question: Did such failure, if any there was, of the defendant to have a street light burning at or near the place into which the plaintiff fell, if he did, constitute negligence on the part of the defendant, according to the definition of negligence given you in this charge? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 12: If you have answered the last preceding question 'yes' then answer this question; but if you have answered 'no,' then you need not answer this question: Was such negligence, if any, in failing to have a street light burning at or near the place into which the plaintiff fell, if he did, the proximate cause (as that term has been defined to you) of the injuries, if any, sustained by plaintiff to his person? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 13: Did the defendant, its agents, servants, employes or its managing officers have any notice or knowledge that on the night of October 31, 1932, the street light at or near the place of the alleged injury was not burning at that time? Answer 'yes' or 'no.' We, the jury, answer 'no.'

"Question No. 14: Did the plaintiff, James R. Howard, use ordinary care and keep a proper lookout for his own safety, while walking along Francis Street, going south, if he did, from Bennett's Filling Station to the place into which he fell, if he did? Answer 'yes' or 'no.' We, the jury, answer 'yes.'"

Because of an affirmative answer to issue No. 14, the jury returned no answer to questions Nos. 15 and 16.

"Question No. 17: At the time and immediately before the plaintiff fell, if he did, and received his injury, if any, was he blinded by lights from an approaching automobile? Answer 'yes' or 'no.' We, the jury, answer 'yes.'

"Question No. 18: If you have answered the last preceding question 'yes' then you will answer this question; but if you have answered 'no', then you need not answer this question: Did the plaintiff fail to use ordinary care after he was blinded, if he was, by the lights from an approaching automobile, and fail to keep a proper lookout for his own safety, at the time and place he fell if he did? Answer 'yes' or 'no.' We, the jury, answer 'no.'"

Because of a negative answer to issue No. 18, questions Nos. 19 and 20 were not answered.

"Question No. 21: Was the injury, if any, sustained by plaintiff the result of an unavoidable accident? Answer 'yes' or 'no.' Upon this issue, the burden is on the plaintiff to show by a preponderance of the evidence that the injuries, if any, sustained by plaintiff, were not the result of an unavoidable accident? We, the jury, answer 'no.'

"Question No. 22: Were plaintiff's injuries, if any, occasioned by an intervening cause, not created by the defendant, which the defendant could not reasonably have foreseen or anticipated? Answer 'yes' or 'no.' We, the jury, answer 'no.'

"Question No. 23: What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will reasonably compensate plaintiff for his physical and mental suffering, if any, in the past, if there has been any in the past, and in the future, if you find there will be any in the future, for his diminished capacity, if any, to labor and earn money, resulting directly and proximately from his injuries, if any, sustained by him on the occasion inquired about herein? Answer in dollars, if any, and cents, if any. We, the jury, answer 'Three Thousand and Five Hundred Dollars.'"

At the request of appellant, the following special issue was submitted to the jury: "Was the street light at corner of Francis Street and Heath Street at the point of the alleged accident, when burning at night, sufficient to warn pedestrians of the creek, branch or natural waterway there situated? Answer 'yes' or 'no.' We, the jury, answer 'yes.'"

Appellant requested the court to give to the jury the following definition of "proximate cause": "Proximate cause, as used in this charge, is that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which that event would not have occurred, and to be the proximate cause of an event it must

have been reasonably anticipated by a person of ordinary prudence that the injury or some similar injury would occur. There may be more than one proximate cause of an event." This requested definition was refused by the court, and appellant has duly assigned error on such refusal.

At the request of appellant, the court submitted a special issue, in response to which the jury found that it had not been shown, by a preponderance of the evidence, that for a period of 30 days immediately succeeding the date of the injury, appellee was physically and mentally unable, either personally, or through agents or attorneys, to give to the chairman or city secretary of the city of Terrell, notice in writing of such injury.

The court, in the main charge, gave approved definitions of the terms "negligence," "ordinary care," "proximate cause," "new and independent cause," "contributory negligence," and "unavoidable accident."

The definition of "proximate cause" given by the court is: "By the term 'proximate cause,' as used in this charge, is meant the efficient and moving cause, without which the injuries (if any) in question would not have occurred; that is, an act becomes the proximate cause of an injury when such injury is the natural and probable consequence of the act in question and ought reasonably to have been foreseen by a person in the exercise of ordinary care, in the light of attendant circumstances."

The court defined the term "new and independent cause" to be: " * * * a cause for which the defendant is not responsible, and which the defendant could not have reasonably foreseen or anticipated, and in the absence of such cause, the injury complained of would not have occurred." ·

The findings of fact by the jury on all issues submitted are supported by substantial evidence and adopted as the findings of this court. These findings were made the basis of the judgment in favor of appellee, and are ample warrant for such judgment. Numerous contentions are made by appellant in a very able brief, in its effort to show that this case either should be reversed and rendered in its favor, or reversed and remanded. Under its various assignments of error, appellant has submitted for consideration of this court

27 propositions of law. These propositions necessarily group themselves about certain major contentions. To discuss each proposition of law separately would cause this opinion to be extended to an unreasonable length, hence we shall discuss only what appears to be the controlling issues on this appeal.

It is earnestly insisted by appellant that compliance with the ordinance, which requires that notice be given within the time and in the manner therein provided, is necessary to the prosecution of a valid cause of action against appellant; that the 30-day period within which such notice of injury is required to be given is a reasonable time, and that as the undisputed evidence shows that 74 days had elapsed before the required notice was given, no valid cause of action existed against appellant. It, therefore, filed a motion for peremptory instruction, moved for judgment after the return of the verdict, and has assigned error on an adverse ruling of the court thereon.

■ Appellant's charter is its fundamental law. In its enactment of ordinances, appellant cannot contravene any charter provision, and if an ordinance be enacted which does contravene any plain declaration of the charter, the ordinance is invalid in so far as it contravenes a charter provision. Vosburg et al. v. McCrary, 77 Tex. 568, 14 S. W. 195; Miller et al. v. N. Burch, 32 Tex. 208, 5 Am. Rep. 242; Allen et al. v. Hollingsworth et al., 246 Ky. 812, 56 S.W.(2d) 530; Kemp v. City of Monett, 95 Mo. App. 452, 69 S. W. 31.

■ Does the ordinance in question, requiring a 30-day written notice of an injury, before suit can be filed, contravene appellant's charter provision on the same subject as to the time within which notice of injury shall be given? The ordinance is above set out and gives the limit of 30 days within which such written notice must be given. Appellant deals with the precise subject-matter in its charter, and the provision with reference thereto is also above set out. This provision gives to the injured party a limit of 90 days within which a written notice of injury shall be given. The charter provision of 90 days cannot be changed by merely adopting a city ordinance, changing such time limit to 30 days, and so at the time of appellee's injury he could give the required written notice within 90 days, under the

controlling charter provision. All of appellant's contentions in this respect are overruled.

Another major contention by appellant is that its motion for peremptory instruction should have been given, and also its motion for judgment, notwithstanding the findings of the jury on certain issues of negligence, for the reason that the jury returned a finding on appellant's requested special issue, to the effect, that the street light at the corner of Francis and Heath streets, at the point of the accident, was sufficient to warn pedestrians of the natural waterway located in Francis street at the place of the accident. The effect of this finding by the jury is reinforced by an ordinance requirement, in effect allowing the city 24 hours after a defect in a street has occurred, to discover such defect, and that as appellant did not know that the street light in question failed to burn on the night of the accident, and as the accident happened within a few hours after the defect occurred, responsibility for the accident, as a matter of law, could not be charged to appellant. This contention must be decided from an inquiry into the conditions existing at the time of the accident.

The undisputed evidence shows that the ditch into which appellee fell was a part of a natural waterway, utilized by appellant for drainage purposes; that it was directly in the path of appellee in traveling south on the east side of Francis street, on that portion of the street where a sidewalk would be, if constructed. That the ditch came out from under the pavement on the east side of Francis street, had perpendicular walls held in place by cement and had a cement bottom, with no protection for one traveling as appellee was, save the light in question which was burning the night before but did not burn on the night in question; that such light could only be turned on and off by means prepared by appellant at the pole on which the light was located; that appellant had made no provision for the turning on or turning off of this light; that it was primarily the duty of appellant to perform the work of turning the light on when night intervened, and turning it off when the night was succeeded by day; that if appellant had performed this duty, its employees charged with such performance would have known some two or three hours before the accident, in ample time to correct the defect

prior to the accident, that on this dark night there was absolutely no warning to pedestrians of the existence of such ditch. The undisputed evidence further shows that a Mr. Bennett, who operated a filling station in the immediate vicinity of the place where appellee was injured, had voluntarily turned this light on and off, without any authority from appellant to do so, and that when he attempted to turn the light on, as darkness approached on the evening in question, it would not light, and he made no report of such fact to appellant, and was under no duty to appellant to make such report.

When appellant improved Francis street and maintained this dangerous condition in the path of one using the east side of Francis street, it had the continuing duty to exercise ordinary care to protect the traveling public from this dangerous condition it permitted to exist. It cannot be said, as a matter of law, that it performed this duty by placing a street light in the immediate vicinity of the place of danger, and then took no precaution to see that the light was burning.

If no volunteer had attempted to perform the duty of appellant on the evening in question, in regard to turning on the light, the result to appellee would have been the same, and certainly, in such a situation, there would have been the issue of the negligence of appellant because of failure to turn on such light. It must be borne in mind that appellant neglected to perform its duty in respect to this light, and if there had been no such neglect by appellant, the failure of the light to burn and to warn pedestrians of the dangerous place in question would have been known to appellant as soon as its employee attempted to turn on the light.

It is well-settled law in this state that a municipality "is required to exercise ordinary or reasonable care to maintain its streets and sidewalks in a reasonably safe condition for travel by those using them in a proper manner. The duty of ordinary or reasonable care which the municipality owes to persons entitled to protection as travelers is a continuing duty, which is not suspended while the street is being repaired." 43 C. J. 999, et seq. This announcement is supported by numerous Texas authorities, some of which are: City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517; Klein v. City of Dallas, 71 Tex. 280, 8 S. W. 90; City of

290

Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667, 27 A. L. R. 927; City of Fort Worth v. Wiggins (Tex. Com. App.) 5 S. W.(2d) 761; Lee v. City of Dallas (Tex. Civ. App.) 267 S. W. 1014; Clark v. City of Athens (Tex. Civ. App.) 253 S. W. 574; City of Waco v. Ballard (Tex. Civ. App.) 246 S. W. 97; City of Fort Worth v. Nelson (Tex. Civ. App.) 220 S. W. 123; City of Dallas v. Halford (Tex. Civ. App.) 210 S. W. 725; Kling v. City of Austin (Tex. Civ. App.) 62 S.W.(2d) 689; Hanks v. City of Port Arthur (Tex. Civ. App.) 8 S.W.(2d) 331.

The duty of appellant in respect to the exercise of ordinary care to maintain its streets and sidewalks in a reasonably safe condition for those rightfully using the same, applies with the same force, regardless of whether this ditch was part of a natural waterway or was a construction prepared by appellant. We are of opinion that, under the conditions existing and the duty resting on appellant, it became a question of fact for the jury to determine whether appellant performed this duty by placing a light on the post at the place where the accident occurred, and afterwards paying no attention to such light.

■ Appellant contends that, as appellee testified that, while walking on the east side of Francis street, and just before he fell into the ditch, he was momentarily blinded by the lights of an on-coming automobile, and that as the jury found this to be a fact, the court erred in submitting as an issue of fact, appellee's contributory negligence in continuing to walk after he was thus blinded, for he was, as a matter of law, guilty of negligence, which caused or contributed to cause his injury. We cannot agree to this contention. While appellee testified that he was blinded, his further testimony shows that he used that term in a relative sense, for he said that he could see enough to walk straight across, and he had a right to assume that the street where he was walking was maintained in a reasonably safe condition. We cannot agree with the cases cited outside of this state, which lend color to appellant's contention. This contention is overruled.

■ Error is assigned because the court did not define the term "efficient and moving cause," as used in the definition of "proximate cause." The definition of the term "proximate cause," in the instant case is substantially the same as the definition of that term in the case of Panhandle & S. F. Ry. Co. v. Reynolds (Tex. Civ. App.) 33 S.W.(2d) 249, 251. A similar assignment of error was made in the reported case, and Chief Justice Hall, writing the opinion for the Court of Civil Appeals at Amarillo, observed: "We think this objection is hypercritical. The court is only required to define legal and technical terms. 'Efficient and moving cause' does not fall within the rule. In Ramsey v. Gibson (Tex. Civ. App.) 185 S. W. 1025, and in Lumsden v. Jones (Tex. Civ. App.) 227 S. W. 358, 360, it is held that 'efficient and procuring cause' in a charge in an action where a broker is suing for commissions, and 'procuring cause' in the charge in the same kind of a case, are not such technical and legal terms as require particular definition by the court." A jury may be confused as much by unnecessary definitions of terms as by not defining terms necessary to be defined. Taking this definition as a whole, we do not believe that a jury could have misunderstood the term "efficient and moving cause," and this assignment of error is overruled.

■ Objection is also made to the definition of "proximate cause," because it did not embrace the term "new and independent cause." The court gave a correct definition of the term "new and independent cause," and then applied the effect of that definition in submitting special issue No. 22, which reads: "Were plaintiff's injuries, if any, occasioned by an intervening cause, not created by the defendant, which the defendant could not reasonably have foreseen or anticipated," to which the jury answer "no." When the definitions of the term "proximate cause" and of the term "new and independent cause" are considered together, with the submission of special issue No. 22, we do not believe any injury could have resulted to appellant by the court's refusal to give the requested definition, embracing the term "new and independent cause." In addition, the only fact in evidence that raised the issue of a "new and independent cause" was the blinding light of an on-coming automobile. The court submitted to the jury the question of the negligence of appellee in respect to his proceeding across the street in the face of such light, and this issue was found against appellant. This concretely submitted the only matter of a "new and independent cause" raised by the evidence, and as held by this court in the

case of J. Lee Vilbig & Co. v. Lucas et al., 23 S.W.(2d) 516, cured any error that may have been committed in the omission from the definition of "proximate cause" the ·question of a "new and independent cause." The assignments of error on this issue are overruled.

In our opinion, the instant case is essentially one of fact, and the jury, having resolved the fact issues in favor of appellee, the judgment should not be disturbed on this appeal. The evidence indisputably shows that, on the evening in question, appellee maintained a deep ditch in one of its main-traveled streets, and that at the time appellee received his injuries there was no character of protection to prevent his falling into such ditch, or warning that such ditch was in existence. Appellee had the right to assume that appellant had exercised ordinary care to make that portion of North Francis street he was using reasonably safe for travel. ˙ The case was fairly tried, and the jury having found on issues of fact that appellant was negligent in maintaining the ditch in the manner in which it was maintained on the occasion of appellee's injury, and that such negligence was the proximate cause of appellee's injury, we are of opinion that the case should be affirmed, and it is so ordered.

All assignments of error that have not been specifically discussed have been examined and found not to present reversible error.

Affirmed.