McDONALD v. DEGNON-McLEAN CONTRACTING CO. et al.

(Supreme Court, Appellate Division, First Department.    March 20, 1908.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE STREETS—NUISANCES.

> An open trench in a street forming a necessary part of a lawful work done therein is not a nuisance, though it is dangerous; but reasonable care must be exercised to guard it and warn persons using the street.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1636, 1637.]

2. SAME—DUTY TO ERECT BARRIERS.

> A contractor engaged in doing lawful work in a street, and maintaining as a part thereof an open trench some distance from the street crossing, is entitled, in determining what precautions are reasonable to properly guard it, to consider the location of the trench and how pedestrians will exercise their rights in the street, and the improbability of any attempt to cross the street at a point other than the usual crossing and the desirability of interfering as little as possible with traffic, and the failure to erect barriers along the curb is not proof of negligence, though such barriers might make an accident to pedestrians well-nigh impossible.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1655.]

3. SAME.

> A city having notice of the general progress of subway work is bound to know that the work will likely leave dangerous holes in the streets, and, as to any holes of which it has notice or which have existed long enough to justify a presumption of notice, it must exercise reasonable care to guard, determined by taking into account the desirability of interfering as little as possible with traffic and the improbability of pedestrians attempting to cross the street at a point other than the usual crossing.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1653–1659.]

4. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

> In an action for injuries to a pedestrian falling into an open trench in a street, evidence *held* not to show negligence of the contractor or the

city in failing to guard the trench, nor freedom from contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1739–1743.]

Appeal from Trial Term.

Action by John P. McDonald against the Degnon-McLean Contracting Company and others. From a judgment for plaintiff against defendant Degnon-McLean Contracting Company and another, and from an order denying a motion for a new trial, they appeal. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

James F. Donnelly, for appellant Degnon-McLean Contracting Co.
Theodore Connoly, for appellant City of New York.
John M. Ward, for respondent.

SCOTT, J. This is an appeal by both defendants from a judgment for plaintiff upon a verdict in his favor in an action for personal injuries, and from an order denying a motion to set aside the verdict and for a new trial. The defendant construction company was engaged, and had been for some time engaged, in constructing a subway through Forty-Second street, in the city of New York, under what is known as the "Rapid Transit Act." Chapter 4, p. 3, Laws 1891. The accident occurred on December 12, 1902, at about half past 5 o'clock in the evening, when it had grown fairly dark. The subway ran through Forty-Second street and from Fourth avenue to Broadway, and consisted of a tunnel constructed in what is known as an "open cut." The surface of the street had been opened, an excavation made to the necessary depth, the tunnel built, the excavation filled up, and surface replaced. This work had been going on for a long while, and the street had been in a greatly disturbed condition. At the time of the accident the work immediately west of Sixth avenue had been nearly completed, and the surface of the street restored, except for a narrow trench which had necessarily been left open for the completion of the work. There was a double line of car tracks on Forty-Second street, and this trench ran between the two lines of track. The cars, as they passed, extended outside the tracks so as to partly cover the trench, so that it was impracticable to rail it off without completely stopping the running of the cars. The open trench began at a point about 30 or 35 feet west of the crosswalk over Forty-Second street on the westerly side of Sixth avenue, and ran westerly for some distance toward Broadway. The street along the curb line was littered up in places with the contractor's tool boxes and materials, so that carts and wagons passing through Forty-Second street were obliged at these places to drive on or partly on to the tracks. Forty-Second street is a comparatively wide, and very important cross-street, and much traveled. The plaintiff, with two companions, who were fellow workmen, had come from their employer's shop at Fifth avenue and Forty-Fifth street. They had crossed from the easterly to the westerly side of Sixth avenue,

somewhere above Forty-Second street, and had walked to the foot of the stairway leading to the elevated railway at the northwesterly corner of Forty-Second street and Sixth avenue, and stood there for a while, talking. The point at which they thus stood was on the northerly side of Forty-Second street, about 35 feet west of the westerly house line of Sixth avenue, or very nearly opposite, and perhaps a few feet west of the point where the open trench began. After talking for a few minutes, they decided to cross to the southerly side of Forty-Second street, and started to go directly across the street. At this moment there was a block or congestion of the traffic along the railway tracks to such an extent that the street cars, trucks, and other vehicles were crowded together on both tracks, and were either stationary or were moving very slowly. The plaintiff led his companions. His own version of what happened is as follows:

"I could only see the track nearest me on the Forty-Second street. I started to go across the street. There was a car right in front of me, and there must have been another car or horse, and I had to take a chance to go through then because it was blocked. When I say I took a chance to get through, I mean to say there was a space there. I forget whether the car was standing still or in motion. I passed at the rear of the car; that is, at the end of it."

The moment plaintiff had passed the end of the car, he fell into the trench, which he had not observed, and received the somewhat serious injuries for which he has recovered. The point at which he fell was not more than five or six feet from the easterly end of the open trench, and it was clearly shown that the defendant construction company had caused a red light to be placed at this end, and had stationed a watchman there to warn foot passengers and vehicles. There were other red lights exhibited at intervals along the trench towards Broadway. There was some difference in the testimony as to how far apart they were; the estimates of distance varying. It is probably not very important, so far as concerns this action, how far apart they were, because from the condition of the traffic it is doubtful whether plaintiff would have observed the lights to the westward, however near they might have been together. There was no direct evidence as to how long the trench had been in this condition, but it could perhaps be inferred that, being the last of a long continued excavation, it or a wider trench had been open for a considerable time. The defendant construction company was engaged upon a lawful work, and the keeping of the trench open was a necessary part of its work. It was not therefore a nuisance, although it was a dangerous obstruction. Its duty was to use reasonable care to so guard the excavation as to warn persons using the highway.

From the nature of the case it could not surround the excavation with a fence, for that would have been to stop all vehicular traffic. It did adopt the precaution which experience has shown to be usually sufficient, to wit, marking the opening with red lights and stationing a watchman to warn vehicles and pedestrians. In determining what precautions it would be reasonable to adopt, the construction company was entitled to take into consideration the location of the construction, some 30 feet away from the usual and customary crossing. It is true that the plaintiff or any one else had the right

to cross a street at any point, but the question the construction company had to determine was not what rights pedestrians had in the highway, but how they would probably exercise these rights. Derby v. Degnon Constructing Co., 112 App. Div. 324, 98 N. Y. Supp. 592. The defendants were not bound to, and could not reasonably have been expected to, so guard the trench as to insure the safety of every heedless foot passenger who sought to cross the street at an unusual and unaccustomed place, and under conditions which would render all precautions, short of actual barriers, futile and ineffective. There is even less reason for holding the city of New York liable than for holding the contractor. It is unnecessary to discuss the question whether or not the subway contracts were the city's contracts. It undoubtedly had notice of the general progress of the subway work, as all the world, including the plaintiff, had, and was bound to know that such work was likely to leave dangerous holes in the highway, and as to any hole of which it had notice, or which had existed long enough to justify a presumption of notice, it was its duty to see that it was properly lighted or otherwise guarded. There was no proof of actual notice to the city, and no proof whatever in the case as to how long before the accident this trench at this particular point had been open. For aught that appeared, the trench might, up to the very day of the accident, have been safely covered up. The learned justice who tried the case intimates in his opinion denying the motion for a new trial that the defendants could have absolutely assured foot passengers from accidents such as plaintiff met by placing some sort of a barrier along the curb so as to fence off the roadway from the sidewalk, and thus render it impossible for a pedestrian to attempt to cross; and the chief proof of negligence dwelt upon the respondent is the failure to erect such barrier. Undoubtedly such a barrier might have been erected in such a way as to make such an accident well-nigh impossible, but we do not consider that either of the defendants was bound to go to this length, for neither of them was in the position of an insurer against possible accident. All that either could be held to under any view of the case was to exercise reasonable care to guard against accidents, and, in determining what would be reasonable care, they were both entitled to take into account the desirability of interfering as little as possible with the traffic and the improbability of any one attempting to cross the street at a point other than the usual crossing. We think that the plaintiff failed to show a lack of due diligence on the part of either defendant, and that in this regard the verdict was against the weight of evidence. The proof of plaintiff's freedom from contributory negligence is scarcely more satisfactory. He knew from almost daily observation that the street had long been in a disturbed condition. He could see on every side evidences that the work had not been wholly completed. There was a broad crossing near at hand which was fully covered over and perfectly safe. The street was blocked with vehicles which obstructed his vision. With this knowledge, and under these conditions, he blindly and heedlessly undertook to cross the street at a point which, while not in the middle of the block, was some 30

or 35 feet away from the usual crossing. Upon every proposition necessary to support a recovery, the verdict was against the weight of the evidence, and should have been set aside.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.