IMOGENE DRIVER V. WORTH CONSTRUCTION COMPANY

No. A-4530. Decided December 15, 1954.
Rehearing overruled January 12, 1955.
(273 S.W. 2d Series 603)

68

*Galloway Huffaker* and *Harold Green,* both of Tohoka, for petitioner.

The Court of Civil Appeals erred in holding that the issue inquiring as to whether deceased was guilty of negligence in failing to drive on the old road was not an ultimate and material issue, and that the issues inquiring of specific acts of deceased in traveling upon the new highway was not negligence, and that he was not negligent in not traveling on the old highway were not in conflict. Buchanan v. Lang, 247 S.W. 2d 445; Nussbaum v. Anthony, 214 S.W. 2d 686; City of Fort Worth. v. Lee, 143 Texas, 551, 186 S.W. 2d 954.

*Chas. J. Murray* and *M. Hendricks Brown,* both of Fort Worth, for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit for damages resulting from the death of Boyd Driver, husband of petitioner. Driver died as a result of injuries suffered by him when about 2 A.M., on the night of May 13, 1952, he drove his automobile down a portion of a new roadway then under construction by respondent, Worth Construction Co., hereinafter called contractor, in Tarrant County, Texas. Petitioner alleged that contractor had an open pit about sixteen inches deep where Ohio Garden Street crossed this new highway and that contractor had no barricade, flares, or warning signs to prevent travelers on this new roadway from driving into said pit. A trial was had to a jury. After the jury had returned its verdict, petitioner filed her motion to disregard findings of the jury and for judgment, and contractor filed a motion for judgment on the jury's verdict. The trial court heard argument on both motions and granted contractor's motion, but overruled petitioner's motion. On petitioner's appeal the Court of Civil Appeals affirmed the trial court's judgment. 264 S.W. 2d 174. Both parties applied for a writ of error, and we granted both applications.

There is no contention on the part of either party that the roadway on which Driver received his injuries had been accepted by the State and was opened for traffic to the public. All the evidence shows that this particular roadway was still under construction at the time of Driver's injury.

Old State Highway 183, in the Ft. Worth vicinity, begins in the western part of town at Camp Bowie Boulevard and runs generally north and east, crossing the Jacksboro Highway (No. 199), thence easterly via the stockyards district and on to Dallas, Texas. On the night of May 13, 1952, Boyd Driver and Ira Siratt were employees of a Mr. Tucker who operated Tucker's Bar & Grill in downtown Ft. Worth. About 1 A.M., after Tucker had closed his cafe, Driver took Mr. and Mrs. Tucker to their home in west or northwest Ft. Worth. Siratt went along for the ride, and (after taking the Tuckers home) Driver was to return Siratt to his home in southeast Ft. Worth. Driver had taken the Tuckers home on at least two previous occasions at night and while the new part of Highway 183 was under construction and Siratt had accompanied him. The State Highway Department had let a contract to contractor to construct this new slab, and thus convert old Highway 183 into a highway of two strips of two one-way lanes each, separated by an unpaved open space of approximated twenty-nine feet in width. The new strip was

south of the old highway, and when accepted by the Highway Department and opened for traffic would carry eastbound traffic toward downtown Ft. Worth. The most direct and convenient way to get from Tucker's Bar & Grill to his home by car was to go out the Jacksboro highway to its intersection with Highway 183, thence out 183 to Merritt Street, thence left or south to other streets which would take one to the Tucker home. This route was the one used by Driver, who was driving his own car, on the night of the accident, and had also been used on the previous occasions when Driver had taken the Tuckers home after closing the cafe. On this night, on the return trip from the Tucker home to Siratt's home, Driver drove across the new construction on Merritt and across the old highway, and about 100 yards north of the old highway. Evidently, sensing he was on the wrong road, he turned around and headed back south down Merritt Street, and crossed the old highway on which he had come from town, and on which he had returned to town on the previous trips. After crossing this paved road, and before he reached the new slab, Driver turned slightly to his left so as to enter upon the new slab and leave the flares and barrier to his right. The new slab protruded some six inches above the ground level at the place where Driver went upon it. Ohio Garden Street was some 800 feet easterly down the slab from the place Driver got upon it. Under the instruction of the municipal authorities, contractor had left a fire lane across the new right of way at Ohio Garden Street so that traffic might cross at this point. This area was unpaved, and the bottom of the fire lane was some twelve to sixteen inches below the top of the concrete slab of the new highway. Contractor had placed flares at each corner of the end of the slab at Ohio Garden Street intersection, thus making two flares on each side of the excavation, or a total of four flares. There was no barricade or barrier across either end of the concrete slab at Ohio Garden Street. The jury found the failure of the contractor to have such barricade was negligence and a proximate cause of the happening in question, but found that contractor did not fail "to have sufficient warning fllares on the new concrete roadway" at the Ohio Garden Street intersection. It was upon the jury's answers to the issue as to barricades that petitioner bases her claim for judgment in her favor.

Petitioner, by points of error Nos. 1, 2, 3, 4, 7, 9 and 10, in varying language, complains of the action of the trial court and the Court of Civil Appeals in denying her a recovery by virtue of a jury finding in answer to Special Issue No. 34 that he was guilty of negligence in not traveling on the old roadway

instead of upon the roadway under construction, and that such negligence was approximate cause of the injuries suffered by Driver and which caused his death.

■ We think the trial court was in error in basing his judgment against petitioner in part upon the jury's affirmative answers to Special Issues Nos. 34 and 35. No. 34 asked the jury by appropriate language if "Boyd Driver was negligent in failing to travel on the old portion of Highway 183 on the occasion in question." No. 35 inquired if such negligence was "a proximate cause of the accident in question." The old portion of Highway 183 was the road on which Driver had come from downtown Ft. Worth on the night in question, and the road used by the public in returning to downtown Ft. Worth, and which Driver had used on the prior occasions he had carried the Tuckers home. Such issue decided no ultimate fact issue in this case. The fact that Driver was not traveling on any other Ft. Worth street save and except the new roadway under construction could not be determinative of the negligence of either contractor or petitioner with regard to the happening at the intersection of Ohio Garden Street where petitioner was injured. The jury's answers to Nos. 34 and 35 should have been disregarded as wholly immaterial as to liability herein. Petitioner's points of error 1, 2, 3, 4, 7, 9 and 10 are sustained.

■ Since we do not agree with the Court of Civil Appeals in its affirmance of the trial court's judgment upon the ground that the jury's answer to Special Issue No. 34 convicted petitioner's deceased husband of contributory negligence and thus prevented her recovery, it is our duty to examine the other assignments of error in the Court of Civil Appeals to determine if there are assignments in that Court presenting other questions of law over which we have jurisdiction and upon which the judgment of the Court of Civil Appeals may be affirmed. Southern Pac. Co. v. Walters, 110 Texas 496, 221 S.W. 264; Holland v. Nimitz et al, 111 Texas 419, 431, 432, 232 S.W. 298 and 239 S.W. 185; Hunt v. Wichita County Water Improvement Dist. No. 2, 147 Texas 47, 211 S.W. 2d 743.

"The rule has therefore been developed, and has become well established, that when it is determined that the Court of Civil Appeals erred in basing its judgment on a particular ground, the Supreme Court is authorized to consider the briefs filed in that court, not for the purpose of reversing its judgment, but for the purpose only of determining whether, by considering other assignments therein, it could affirm such judgment. Cox.,

Inc., v. Humble Oil & Refining Co., Texas Com. App., 16 S.W. 2d 285; Jordan v. Morten Investment Co., 127 Texas 37, 90 S.W. 2d 241; Garcia v. Moncada, 127 Texas 453, 94 S.W. 2d 123." Texas Employers Ins. Ass'n. v. Kennedy, 135 Texas 486, 143 S.W. 2d 583, 585.

■ Upon examination of respondent's brief we find a counter proposition that the trial court's judgment should be affirmed because the new concrete roadway, at the time of the accident not being opened for public travel, the only duty owed to Driver by contractor was to properly warn him, and not to wilfully, wantonly, or by gross negligence injure him. We think this point should be sustained.

It is fundamental that the liability of contractor must depend upon the failure to properly discharge the duty, if any, which contractor owed to Boyd Driver on the occasion in question. T. J. Mansfield Const. Co. v. Gorsline, Texas Com. App., 288 S.W. 1067 (3).

The duty of contractor to the public was to give adequate warning that this concrete slab was not open to travel. "If liable under waiver of sovereign immunity, an agency charged with the duty of maintaining public roads or highways is responsible for injuries received on a regular highway, but not for those received on a road not public, not yet opened to traffic, or closed before the occurrence of the accident." 40 C.J.S. 295, Highways Sec. 255a. See also notes 7 A.L.R. 1203, 104 A.L.R. 955, 119 A.L.R. 841. 19 McQuillin: Municipal Corporations, 3rd Ed. Secs. 54.27, 54.98. Restatement of the Law, Torts, Vol. 2, p. 1132, Sec. 418 (1)b.

This Court in Shuford v. City of Dallas, 144 Texas 342, 190 S.W. 2d 721, 724, quotes with approval from City of Terrell v. Howard (Texas Civ. App), 85 S.W. 2d 283, 289, reversed on other points 140 Texas 459, 111 S.W. 2d 692, the following statement regarding a municipality's liability " 'a municipality may entirely close a street while repairs are going on, and if a street is so closed, there is no liability for injuries, provided, of course, it is properly closed, i.e., the barriers are sufficient to warn travelers and to impart notice that the street is closed. Moreover, if necessary to prevent accidents, a municipality not only may but it is its duty to close the street to the public by some barrier'."

"It is clear that the street need not be so barricaded as to preclude absolutely the possibility of injury, but it is sufficient

that a plain warning of danger in traveling a street is given. 7 McQuillin on Municipal Corporations (2d Ed.) 217; Hunter v. (City of) Monstesano, 60 Wash. 489, 111 P. 571, Ann. Cas. 1912B, 955; McDonald v. Defgnon-McLean Contracting Co., 124 App. Div. 824; 109 N.Y.S. 519; Jones v. Collins, 177 Mass. 444, 59 N. E. 64; Leonard v. Boston; 183 Mass. 68, 66 N. E. 596; Lineburg v. St. Paul, 71 Minn. 245, 73 N. W. 723; John D. Roberts, Administrator, v. Town of Eaton, 238 N.Y. 420, 144 N. E. 667, 36 A.L.R. 411, and notes.

"The rule is well summed up as follows: it is the duty of the municipality when the obstructions are placed in the street to use such means as are reasonably necessary to warn those using the streets of the presence of the obstruction and it is generally a question for the jury 'under the particular facts in each case to determine whether or not the means used for this purpose were reasonably sufficient.' Guard rails, lights, watchmen, any or all might be required according to the local conditions. In some instances guard rails might be amply sufficient. In others lights, while in still others additional means might be required." McQuillin on Municipal Corporations, supra.

■ Although some of the above quotations have to do with the liability of a municipality, it is settled that an independent contractor engaged in highway construction has the same duties as to warning barricades, flares, etc., 21 Texas Jur. 662, Sec. 144, 40 C.J.S. 288, Sec. 252b; 25 Am. Jur. 653, Sec. 361.

The trial court, in order to determine whether or not contractor was guilty of negligence in not having adequate warning or barricades at the intersection of Merrit Street with the new slab, submitted a number of issues to the jury. The burden was upon the petitioner to establish that the contractor had failed to give sufficient warning to the traveling public that the new slab was not open to travel. Unless petitioner discharged this burden, she could not recover, for without favorable findings on such issues, contractor had violated no duty to Boyd Driver, and therefore could not be guilty of any negligence. The evidence showed that contractor had flares, a barricade, and a sign "Construction. Drive Carefully" at the Merritt Street intersection. Therefore, it was a jury question as to the sufficiency of such warning devices. Shuford v. City of Dallas, supra, 25 Am. Jur. 872, Sec. 587; 40 C.J.S. 338, Highways Sec. 281a.

In order to properly place the burden of proof within the issue the trial court submitted the issues as to adequate warnings, etc., in the negative. Special Issue No. 1 was as follows:

"Question: Do you find and believe from a preponderance of the evidence that at the time of and immediately before the happening in question the defendant failed to have a barricade on the new concrete roadway at its intersection with Merritt Street sufficient to prevent the travelling public from entering upon such roadway? Answer 'yes' or 'no'."

to which the jury answered "No." Special Issue No. 4 was answered that it was not negligence on the part of the contractor in failing to have a flagman or watchman at the Merritt Street intersection to warn the traveling public from driving on the new concrete roadway. Special Issue No. 8 asked the jury to determine from a preponderance of the evidence if "the defendant failed to have signs at the Merritt Street intersection sufficient to give notice to the traveling public that the new concrete roadway was not open to traffic." The jury answered "NO." The jury answered "No" to Special Issue No. 11 which inquired by appropriate language if "the defendant failed to have flares at the Merritt Street intersection sufficient to give notice to the traveling public not to enter upon the new concrete roadway."

Thus the jury found that the contractor did not fail to discharge the duty he owed to give notice to the traveling public not to enter upon the new concrete roadway. It is argued by petitioner that the negative submission and the negative answers of the jury is not an affirmative finding that the contractor did have sufficient barriers, signs, and flares to give notice to the traveling public not to enter upon the new concrete roadway. The burden was upon the petitioner to secure favorable jury findings as to facts that would show a breach of contractor's duty owed to the traveling public (i.e., that contractor was negligent, etc.). In other words, petitioner must show that contractor failed to have adequate warnings, etc. Under the facts in this case, contractor had no burden or duty to show it had adequate warnings, etc. Until petitioner has established neglicence on the part of contractor, there can be no liability upon contractor. No objections were made to the form of submission or negative wording of these issues by any of the parties to the suit.

We think a better way to have submitted these issues would have been as provided in Rule 277, T.R.C.P. "* * * *Where practicable, all issues should be submitted in the affirmative* and in plain and simple language. It is proper to so frame the issue as to place the burden of proof thereon, *but where, in the opinion*

*of the court, this cannot be done without complicating the form of the issue, the burden of proof on such issue may be placed by a separate instruction* thereon. * * *"* (Emphasis ours). Our experience teaches us that a negative submission calling for a negative answer—i.e.—a double negative, not only confuses the jury, but also in many instances confuses all counsel.

■ Petitioner has a complaint that the favorable jury answers to the special issues submitted by the court on the twelve specific grounds of active negligence on the part of the deceased in getting upon and driving down the roadway under construction, as alleged by contractor, are in conflict with the answers of the jury that contractor did not fail to give adequate warning to deceased. There is no conflict in these answers. By the answers of the jury that contractor did not fail to give adequate warning to deceased, the jury absolved contractor of any negligence on his part, and therefore plaintiff cannot recover against the contractor. The jury's answers absolving deceased of contributory negligence can form no basis for recovery by the petitioner. She must first show a breach of duty owed by contractor before she can recover. Not having secured jury findings as to such breach of duty, petitioner cannot recover by virtue of the fact that deceased was not guilty of contributory negligence. The issues of contributory negligence were defenses plead by contractor as a defense in the event it had been found guilty of negligence. Plaintiff must show negligence on the part of the contractor before there can be any liability on contractor's part.

Our decision above of necessity overrules petitioner's assignments of error numbered 5, 6 and 8.

The new portion of the road not being open to travel by the public generally, but being incomplete and still under construction, the contractor had a right to prevent the public from using said roadway. Contractor also had a duty to warn the traveling public not to use this roadway. This duty he sought to discharge by installing and maintaining warning signs, flares and barricades. Whether or not contractor had adequate warning devices was a jury question, and the burden was upon plaintiff to secure a finding by the jury that contractor had failed in this duty owed Driver and the public generally—i.e.—that contractor was guilty of negligence in this regard.

■ When Driver entered upon the roadway in spite of these warnings, he was wrongfully upon such roadway, and had no legal right to be thereon; therefore, contractor owed Boyd

Driver only the duty not to injure him wilfully, wantonly, or through gross negligence. Carlisle v. J. Weingarten, Inc., 137 Texas 220, 152 S.W. 2d 1073. Petitioner has no pleadings seeking to establish liability on such grounds, nor is any contention made that the evidence would support a recovery thereon. No issues on these grounds were requested or submitted. Therefore no liability can be predicated on the jury's answer that the failure to have a barricade across the new concrete slab at Ohio Garden Street was negligence and a proximate cause of the accident. Such failure to have a barricade at the Ohio Garden Street constituted only simple negligence, and not gross negligence; nor was such failure wilful or in wanton disregard for the safety of Driver or the traveling public. Petitioner had a point that there was "no evidence" to sustain the jury's answers to Special Issues Nos. 1, 4, 8 and 11. We find there is evidence to sustain these findings and we overrule petitioner's point of "no evidence."

We approve the holding of the Court of Civil Appeals upon the admissibility of the photograph of the Merritt Street intersection and its environs. Accordingly we overrule petitioner's assignment No. 11.

We have examined the record and find that the Court of Civil Appeals was correct in holding admissible the testimony of the witness, Welton Cumming, over the objection lodged thereto by petitioner. We overrule petitioner's point of error No. 12.

■ Upon examination of petitioner's brief in the Court of Civil Appeals, we find petitioner's assignments of error that the jury's answers to those special issues, (Nos. 1, 4, 8 and 11) inquiring whether or not the contractor had failed to give adequate warnings by barricade, flares, signs and presence of a watchman, are against the overwhelming preponderance of the evidence. These assignments were not passed upon by the Court of Civil Appeals. We have no jurisdiction to pass upon such assignments. This cause must be remanded to the Court of Civil Appeals with directions that they pass upon the assignments as to the weight and preponderance of the evidence to sustain the finding by the jury in answer to the issues in question, as well as other assignments which the Court of Civil Appeals did not pass upon, and which are not determined by this opinion.

This cause is reversed and remanded to the Court of Civil Appeals for further proceedings consistent with this opinion.

Opinion delivered December 15, 1954.

Mr. Justice Smith dissenting

This case was submitted to the jury upon 83 special issues. In answer to Special Issue No. 34, the jury convicted Boyd Driver, deceased, of contributory negligence in failing to travel on the old portion of Highway 183. The trial court entered judgment in favor of the respondent. Petitioners appealed to the Court of Civil Appeals and that court affirmed the judgment as to petitioner, Imogene Driver, and reversed and remanded the cause as to petitioner, Ira Siratt. The Court of Civil Appeals held Issue No. 34 was an ultimate and controlling issue and having answered against petitioner she could not recover.

The Court of Civil Appeals passed on three other points which were raised by the petitioner in that court. The remaining 39 points were not considered in any manner. These points involve the question which was not considered by the Court of Civil Appeals. The points not discussed or determined go directly to the question determined by the majority to be controlling. I am of the opinion that this court should reverse the cause on the question decided by the Court of Civil Appeals and remand it to that court for consideration by it of all the assignments not considered in its former opinion. McKenzie Construction Co. v. City of San Antonio, 131 Texas 474, 115 S.W. 2d 617; Inman v. St. Louis Southwestern Railway Co., Texas Com. App., 288 S.W. 150; Bowles v. Mitchell, Texas Com. App., 245 S.W. 74; Schroyer v. Chicago, R. I. & G. R. Co., 111 Texas 24, 222 S.W. 1095, 226 S.W. 140.

In the case of McKenzie Construction Company v. City of San Antonio, supra, this court said:

"* * * Should we consider and overrule all assignments of which we have jurisdiction, we would still be required to remand the cause to the Court of Civil Appeals for a determination of those assignments over which we have no jurisdiction, and the result might be that that court would sustain one or more of such assignments and thereby render our labors futile. Under such a situation the practice has been established here of remanding the cause to the Court of Civil Appeals for consideration by it of all the assignments not considered by its former opinion."

When a Court of Civil Appeals pretermits the consideration of assignments other than those raising the one controlling question upon which its judgment rested and where this court reverses that court on the only question decided, this court should not preclude a determination of all these other assignments. Schroyer v. Chicago R.I. & G.R. Co., supra. The rule announced in the cited case is particularly applicable to the present case, in that, the Court of Civil Appeals did not pass upon petitioner's assignment that there was no evidence to support the jury's answer to Special Issue No. 1. The petitioner was only required to present points in this court which were passed upon by the Court of Civil Appeals. That is the course petitioner followed. He did not present a point of "no evidence" to support the answer of the jury to Special Issue No. 1 or any of the other issues discussed in the majority opinion, except the three mentioned above. These three points only dealt with questions of improper cross-examination of a witness, and the admissibility of photographs and certain testimony of the witness, Cummings. The question of "no evidence" has not been briefed in this court. This Court should not affirm the judgment of the Court of Civil Appeals on a theory or question not passed upon by that court. The petitioner perfected her appeal to the Court of Civil Appeals and is entitled as of right and under the law to have all assignments considered and disposed of by that court. I see no justification or plausible reason why this case should be made an exception to the established rule announced in the above well considered cases by this court.

I do not agree with the majority disposition of the question of the admissibility of the testimony of the witness, Welton Cummings. The Court of Civil Appeals overruled the assignment presented by petitioner that the trial court erred in permitting the witness, Welton Cummings, to testify over objection that the State Highway Department inspected the construction job for flares, barricades and signs and found the same were sufficient.

It is my opinion that the improper testimony hereinafter set out influenced the jury to answer Special Issue No. 1 to the effect that respondent did not fail to have a barricade on the new concrete highway sufficient to prevent the traveling public from entering upon such highway. The petitioner first objected to the testimony by merely stating "We object to that." This was followed by the additional objection: "Does the court understand we have our objection to this entire line of testimony as being irrelevant and immaterial and cannot

prove or disprove and would attempt to substitute the advice and counsel of other parties other than will be submitted to the jury by the court?" The court replied: "Yes, sir." The petitioner then requested the court to "note our exception to each and every question to the court's ruling." The objection was sufficient and should have been sustained.

Respondent had previously called a witness, W. A. Woody, who was construction inspector for the State Highway Department, and attempted to elicit the same evidence from him. The petitioner's objections were sustained. The witness, Welton Cummings, was permitted, over objection, to testify as follows:

"Q. In putting your barricades and in placing your warning signs do you have any supervision from the State Highway Department?

"A. We do.

"Q. Does the State Highway Department have an inspector on the job during the whole time you are carrying on the project?

(Objection — overruled)

"Q. Does the State Highway Department have an inspector?

"A. Plenty, Yes, sir.

"Q. Do they make inspections from day to day?

"A. Yes, sir.

"Q. Do they make inspections with reference to barricades and flares and signs?

"A. They do.

"Q. Do they make such inspections?

"A. They do.

(Objection — overruled)

"Q. Does the State Highway Department have a resident engineer on the job?

"A. Yes, sir.

"Q. Did he make inspections from day to day?

"A. Yes, sir.

"Q. Did he make inspections with reference to existing barricades and flares and warning signs?

"A. He did.

"Q. Do they have anybody besides a resident engineer and an inspector who has anything to do with making those inspections?

(Objection — overruled)

"Q. Did the State Highway Department at that time have anyone other than the inspector and the resident engineer?

"A. The inspectors and the engineer.

"Q. What?

"A. Inspectors, not just one.

"Q. Not just one. How many of them were on that job out there?

"A. Oh, there were six or eight.

"Q. Six or eight. From time to time in carrying on jobs do inspectors and resident engineers call your attention to corrections they desire with reference to signs, barricades, or flares?

"A. Yes, sir.

"Q. Have you ever had your attention called with reference to any correction at Merritt Street?

"A. No, sir.

"Q. Had the State Highway Department made any complaint at all about the Merrit Street intersection?

"A. No, sir."

The testimony as set out above could have served no other purpose than to show to the jury that the signs were regarded as sufficient by Mr. Woody, the State Highway Department inspector, and to cause the jury to believe that there was no negligence on the respondent's part by reason thereof.

In this connection, the testimony as to the barricade at Merrit Street amounts to no evidence that a barricade was present at Merrit Street sufficient to prevent the traveling public from entering upon the new highway. The new highway was 24 feet wide. The barricade was 12 feet in length. One witness testified the barricade was in the middle of the highway, but admitted on cross-examination that it could have been farther to one side. Two officers testified that a barricade was situated

down the new highway from Merritt Street (the distance varies) and that only 9 feet of the barricade extended over the highway. In this state of the record, I can think of no greater damaging testimony than to permit a witness to relate that the inspector for the State Highway Department inspected the barricades daily and had never made any complaint about the Merritt Street intersection. The jury no doubt concluded from this tesimony that the barricade was sufficient; otherwise, the inspector would have registered an objection. A witness can testify as to actual facts as they existed, but he is not allowed to give his conclusion. The issue as to the sufficiency of the barricade was for the jury to pass upon. It would have been proper for the witness to testify as to how the barricade was constructed and where it was placed, but to allow him to state that the Highway Department regarded it to be sufficient invaded the province of the jury and permitted the witness to determine the issue the jury was called upon to answer. The testimony was inadmissible and highly prejudicial and admitted in violation of well established rules of evidence. Every litigant is entitled to have the issues determined by a jury, and the verdict should be passed on competent evidence. One of the important functions of the trial court is to safeguard the rights of the parties in this respect. Because of the prejudicial error in admitting the above testimony this cause should be reversed and remanded to the trial court for a new trial.

I still contend that this Court should not pass upon the question of the duty respondent owed the deceased, Mr. Driver, and the question of whether or not the evidence supports the answer of the jury to Special Issue No. 1, but, in view of the opinion of the majority, I insist that there is no competent evidence in this record to support the finding of the jury that the barricade was sufficient to warn the traveling public. The majority opinion does not, in exact language, classify the deceased as an invitee, licensee or trespasser, but, in my opinion, the effect of the holding is to classify him as a trespasser. I think the doctrine of trespasser should not apply in view of the record in this case. This Court should hold, if it holds anything, that the contractor owed a duty to exercise ordinary care to keep the premises safe for the use of members of the public coming thereon in good faith by invitation, either expressed or implied. If the deceased, Mr. Driver, acted in good faith, and not on mere pretense, he had the right to be on the new concrete highway on the occasion in question and was entitled to receive the protection of ordinary care. Kallum v. Wheeler, 129 Texas 74, 101 S.W. 2d 225. What were the facts going to show that he acted

in good faith in entering the new highway at Merrit Street? Merritt Street had been opened to the public before the date of the accident; the new concrete highway was being used admittedly by men working down near the Ohio Garden Street intersection; automobile trucks were visible on the new highway at the Merritt Street intersection. (Certainly no one could tell whether the tracks were made by cars driven by employees or the traveling public.) There was no sign at Merritt Street warning the public not to use the new highway. To the contrary, there was a sign which advised the public "Highway Construction—Drive Carefully." Incidentally, the jury found that Driver complied with the admonition to drive carefully. The so-called barricade was situated down the new highway from Merritt Street and towards Ohio Garden Street, a distance of from 5 to 10 feet. It was over on one side of the highway. The new highway had been completed to Merritt Street and beyond. No work on the concrete slab was being done on the strip between Merritt and Ohio Garden Streets. The place of danger was at the Ohio Garden Street intersection approximately 800 feet from Merritt Street. The new highway was situated parallel with old highway No. 183 with a strip of land between the two highways. I think the following rule applies in the case: "Where a street is so constructed or altered as to present at one point two paths, both of which exhibit the appearance of having been used by travelers, and one of them leads to a dangerous place, while the other is safe for travel, it is the duty of the city to indicate, in a manner not to be mistaken by day or by night, that the unsafe path is to be avoided; and, if it cannot be otherwise done, to put up such an obstruction as will turn the traveler from the wrong track." Rivero v. New York, 290 N. Y. 204, 48 N.E. 2d 486, 488, 14 N. C. C. A. N.S. 724.

The new highway had the apearance of being open to the traveling public at its intersection with Merritt Street. As heretofore said, the work was actually being done a distance of 800 feet from that intersection. Under such circumstances, I think the rule, as stated in City of Terrell v. Howard, Texas Civ. App., 85 S.W. 2d 283, 289, reversed on another point, 130 Texas 459, 111 S.W. 2d 692, applies:

"It is well-settled law in this state that a municipality 'is required to exercise ordinary or reasonable care to maintain its streets and sidewalks in a reasonable safe condition for travel by those using them in a proper manner. *The duty of ordinary or reasonable care which the municipality owes to persons entitled to protection as travelers is a continuing duty, which is*

*not suspended while the street is being repaired'."* (Emphasis added).

The doctrine of trespasser-licensee-invitee is not really the one applicable to this case but from this doctrine has arisen one pertaining to highway construction and repair to the effect that in constructing or repairing a street or highway the contractor owes a duty to the public to close the street or highway or otherwise adequately warn the traveler that it was not open to the public. The jury in the present case found the respondent was negligent in failing to have a barricade at the Ohio Garden Street intersection. If the highway was not properly closed, or if proper warning was not given at the Merritt Street intersection, then it was the duty of respondent to barricade Ohio Garden Street. This doctrine is recognized in Shuford v. City of Dallas, 144 Texas 342, 190 S.W. 2d 721. The question resolves itself into one of whether the respondent had properly inclosed the roadway or otherwise warned the petitioner that the roadway was not open to the public. The question is one determining duty and therefore petitioner had the burden of proving that the roadway was not properly inclosed or proper warning given and in requesting proper special issues on the question.

In addition to alleging negligence on the part of respondent in failing to barricade Ohio Garden Street, the petitioner alleged acts of negligence in failing to give adequate warning at Merritt Street. Special Issues Nos. 1, 4, 8 and 11 submitted respectively whether respondent failed to have a barricade, signs and flares at Merritt Street sufficient to give notice that the highway was closed and whether respondent was negligent in not having a flagman or watchman there. All of these issues were answered in the negative. The answers to these issues do not constitute a finding that the road was properly barricaded since the issues submit specific instances of failure to warn and none of them singularly or collectively could constitute a finding that there was or was not sufficient warning that the road was closed; i.e., the jury could have found that the barricade was not sufficient to warn but this would not mean that there was not sufficient warning since a sign or a flare by itself could be sufficient. Or they could have found that all were insufficient and yet there might have been some other sufficient means of warning. Likewise, a negative finding to Special Issue No. 1 does not mean that the barricade did sufficiently warn since that would only show that petitioner had failed to sustain his burden of proof.

It follows from this that petitioner has tried his case on

the wrong theory. He should have requested an issue inquiring of the jury whether the respondent had properly inclosed the road or otherwise sufficiently warned the petitioner that the road was not open to the public. Without such a finding the petitioner is not entitled to recover since he has the burden of proving that respondent owed him a duty to barricade Ohio Garden Street. Respondent did not owe petitioner this duty unless he had failed to properly inclose the new highway at Merritt Street. Whether the road was properly inclosed cannot be determined as a matter of law and so it should have been submitted to the jury by special issue.

Since the majority has reversed the trial court and the Court of Civil Appeals this cause should be remanded to the trial court for a new trial. Rule 505, Texas Rules of Civil Procedure. As said by this Court in the case of Hicks v. Matthews, 153 Texas 177, 266 S.W. 2d 846, "this court, * * * should remand the case for another trial 'if it shall appear that the justice of the case demands another trial.' Rule 505, T. R. C. P. This court exercises a wide discretion in determining whether it should render final judgment here or remand the case for another trial. The fact that a peremptory instruction would have been justified does not necessarily mean that the cause should not be remanded to the trial court. Associated Oil Co. v. Hart, Texas Com. App., 277 S.W. 1043 * * * * *. Such remanding has often been ordered to supply additional testimony, to amend the pleadings, and even to show jurisdiction."

It is true this case has been remanded to the Court of Civil Appeals; however, it is my position that the justice of this case demands that it be remanded to the trial court for a new trial.

Delivered December 15, 1954.

Rehearing overruled January 12, 1955.