Imogene DRIVER, Appellant,

v.

WORTH CONSTRUCTION COMPANY,
Appellee.

Ira SIRATT, Appellant,

v.

WORTH CONSTRUCTION COMPANY,
Appellee.

Nos. 15469, 15470.

Court of Civil Appeals of Texas.

Fort Worth.

April 1, 1955.

Rehearing Denied April 29, 1955.

Calloway Huffaker and Harold Green, Tahoka, for appellants.

Charles J. Murray and M. Hendricks Brown, Fort Worth, for appellee.

PER CURIAM.

This opinion disposes of appeals taken in two separate cases. Both cases were consolidated for trial in the court below, and handled as separate appeals. See Driver v. Worth Construction Co., Tex. Civ.App., Forth Worth, 1953, 264 S.W.2d 174, reversed in Tex., 273 S.W.2d 603, and Siratt v. Worth Construction Co., Tex.Civ. App., Forth Worth, 1953, 263 S.W.2d 842, reversed in Tex., 273 S.W.2d 615.

Both cases were remanded to this court for our consideration of points of error common to both. The points of error embody contentions on the part of the appellants that certain negative findings made by the jury in answer to special issues which placed the burden of obtaining affirmative findings upon appellants were so against the great weight and preponderance of the evidence as to be clearly wrong. These points were not passed upon in our former opinions.

Judgment was for the defendant in both cases. It is now established that the defendant, appellee here, has won the suits unless the plaintiffs, appellants here, are entitled to have their suits tried once more. We have concluded that they are not so entitled.

Judgments in both cases are affirmed.

As previously noted, the cases were tried together. The issues for consideration here were controlling of the judgment, at least absent any objection thereto by the defendant. By such issues the plaintiffs sought to obtain affirmative findings of fact. Ap-

pended to each of such issues were conditionally submitted issues upon the question of negligence and/or proximate cause. In other words, if the great weight and preponderance of the evidence only warranted the jury in making an affirmative finding in answering the issues, or any of them, a judgment based upon a negative finding could not be permitted to stand. Our duty would be to remand the causes to the court below, where, upon another trial perhaps there might be evidence warranting negative findings in case another jury repeated the act of the former, or where perhaps the new jury might answer the same issues in the affirmative and pass on to the appending conditionally submitted issues.

The only jury finding which proves troublesome to us was to Special Issue No. 1, reading as follows:

"Question: Do you find and believe from a preponderance of the evidence that at the time of and immediately before the happening in question the defendant failed to have a barricade *on the new concrete roadway* at its intersection with Merritt Street *sufficient to prevent the traveling public from entering upon such roadway?* Answer: No." (Emphasis ours.)

The other issues were framed so as to constitute inquiries as to whether the defendant *failed* to have signs at the intersection or *failed* to have flares at the intersection *sufficient to give notice to the traveling public not to enter upon the new concrete roadway,* and whether the defendant was negligent in failing to have a flagman at the intersection. There was in fact no flagman at the intersection, and there was no legal duty upon the defendant to have such a flagman, so therefore it could not be said that the jury's finding in this respect was contrary to the great weight and preponderance of the evidence.

Neither could it be said that the jury's refusal to find for the plaintiffs relative to the questions upon signs and flares was contrary to the great weight and preponderance of the evidence,—negative findings having been made. From the previous opinions the situation relative to the signs and flares is clearly apparent, and also apparent is the fact that there was a "sawhorse-type" barricade, accompanied by flares, on the new concrete roadway at the point where the plaintiff's automobile was driven onto it. We believe that the barricade, the signs, and the flares, considered all together in whole or in part, or individually, might properly be treated as signs *sufficient to give notice to the traveling. public not to enter upon the new concrete roadway.* The term "sign" or "signs" was not defined in the court's charge. There was adequate evidence that the flares at the intersection were so situated that they should have given like notice to the traveling public.

Relative to Special Issue No. 1, it is noted that some elaboration might be made of the description and location of the "sawhorse-type" barricade, or of the description and location of the barricade properly considered as made up of it and the flares adjacent thereto. It was situated on the new concrete roadway near the Merritt Street intersection. Merritt Street was 24 feet in width. The new concrete roadway, or the concrete slab treated as such during the trial, was also 24 feet wide. As noted in former descriptions, Merritt Street runs north and south, and the new concrete roadway runs from the southwest toward the northeast. There is evidence in the record relative to the "sawhorse-type" barricade part of the entire barricade, as composed of such and the flares at the north end thereof. This evidence is to the effect that the new concrete roadway was so blocked in respect to traffic by automobiles or vehicles of similar type that no motorist could get onto the new concrete roadway in traveling toward the northeast without getting completely off the concrete onto the very rough ground to the north. The evidence is likewise to the effect that no motorist could get onto the new concrete roadway from Merritt Street without first getting off Merritt to the north of its intersection with the new concrete roadway, passing over the same very rough ground, and driving back upon

the concrete at a point at least several feet east of the extension of the east curb line of Merritt Street. There is testimony that the barricade on the new concrete roadway was 20 feet east of its intersection with Merritt Street, and there is no evidence to the contrary, though from the diagrams used in the interrogation of witnesses the north end of the barricade was not quite so far removed, due to the angle of the intersection, and the fact that the barricade was at right angles with the new concrete roadway.

Of course, since the new concrete roadway was blocked in part by the location of the flares, it is evident that the timbers of the "sawhorse-type" barricade did not go so far across the concrete slab that the operator of an automobile could not have entered without getting completely off onto the very rough ground at the north end, but the evidence is adequate to establish that an automobile operator could not have entered with any part of his automobile remaining on the pavement, absent the removal of at least one flare or the shifting of the timbers of the "sawhorse-type" barricade. The court did not define the term "barricade", and under the circumstances of this case we believe that the flares can themselves be treated as the barricade, or as a part of the barricade used by the defendant.

We believe therefore that the situation was analogous to that of an ordinary street, the pavement of which is blocked a short distance from its intersection with another street, and where the street could not be entered by an automobile from the intersecting street except by its being driven off the roadway of the intersecting street, up over the curb, if any, across and over property which constitutes no part of any street or roadway, and thence onto the surface of the street which is blocked.

That such was the manner of entry by the automobile occupied by the plaintiffs was the theory upon which the defendant tried that part of the case relating to the manner by which their automobile actually got on the new concrete roadway. The testimony was sufficiently developed so that had there been an issue as to whether such was the manner of entry by the automobile of the plaintiffs, with the burden thereof cast upon the defendant, an affirmative finding in such respect would have been adequately supported. Of course, the new concrete roadway was not so barricaded down the north side thereof—adjacent to the ground lying between it and the old roadway—that a motorist could not get onto it by using this ground. The defendant points out that to have required such of it would have been to require that it fence-in the new roadway. This we believe to be true. Of course, under some circumstances a contractor might be under a duty to fence-in a new roadway constructed by it, and it might be that such an issue would, under some circumstances, be a material issue, just as we must here consider Special Issue No. 1 to be a material issue where obviously, had proper objection been made to its submission, it could not have supported a judgment against the defendant. We must consider it as a proper issue for it would have supported a judgment for the plaintiffs had it, and the issues conditionally submitted thereunder, been answered affirmatively, with no objection thereto made and preserved.

Despite the form and substance of the issue, we are of the opinion that in view of the evidence upon the barricading or blocking of the roadway, the negative finding returned by the jury is not so against the great weight and preponderance of the evidence as to require the reversal of the judgments. See Speer's Special Issues, Chapter VIII, "Form and Construction of Issues", sections 208 to 211, inclusive, and Chapter XVI, "Construction and Sufficiency of Findings", sections 408 to 412, inclusive.

Judgments in both cases are affirmed.