R. O. McDONNELL DEVELOPMENT
COMPANY et al., Appellants,

v.

John SCHLUETER et ux., Appellees.

No. 16128.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 7, 1960.

Rehearing Denied Nov. 4, 1960.

Martin, Moore & Tackett and Elvin E. Tackett, Fort Worth, for appellants.

W. Scott Clark, Fort Worth, for appellees.

MASSEY, Chief Justice.

In the spring of 1956, John Schlueter and his wife, hereinafter called plaintiffs, became prospective purchasers of a house and lot in Sunset Acres, a subdivision to the City of Fort Worth, Texas. They became acquainted with Mr. R. O. McDonnell, then President of the R. O. McDonnell Development Company, a corporation, hereinafter termed the McDonnell Company, and one of its salesmen. After talking with Mr. McDonnell, the plaintiffs entered into a contract to purchase a house, upon completion, within the aforesaid subdivision. Before time for consummation of such contract, the plaintiffs decided that they would prefer a different house within the same subdivision which was a short distance from that for which they originally contracted. Through amicable agreement of all parties, the earlier contract was cancelled, and they entered into a new contract for the second house on Lot 12, in Block "T", on July 30, 1956. By October 4, 1956, the plaintiffs had moved into this house and on said October date the purchase was consummated. Closing was effected through the payment by plaintiffs of approximately $1,401 in cash, the payment for plaintiffs (by a mortgage company) of $12,000, and additionally by the plaintiffs' delivery to the seller, the McDonnell Company, of a second lien note in the amount of $2,090.00, secured by a second lien on the property and additionally secured by a deed of trust. Approximately one month later, on November 5, 1956, the aforesaid second lien and note were transferred by the McDonnell Company to Arthur Lee Perkins. Plaintiffs made payments on both the first and second lien notes up until the time of a flood in May of 1957, which inundated the area in which the subject property was located. Subsequently, the plaintiffs notified Perkins that they would not pay any more on the second lien note, and they did not pay any installment prescribed to fall due thereupon after such time, although payments were kept up on the first lien note. On December 2, 1958, by reason of such failure to make any payments on the second lien note, a sale was made under authority of the deed of trust securing the same, at which sale Perkins became the purchaser of the property subject to the rights of the first lien holder. Promptly thereafter the plaintiffs brought suit against the McDonnell Company, McDonnell, individually, and Perkins. Relief sought was actual and exemplary damages because of intentional actionable fraud on the part of the McDonnell Company and McDonnell in having induced the purchase of the subject property through known false representations that the property was not subject to flooding and was of sound construction. Further, plaintiffs alleged that they sustained damages as the

result of actionable fraud on the part of all three of the defendants in having conspired in representing that the house purchased was constructed in a good and workmanlike manner when in fact the contrary was true. A cross-action was filed against plaintiffs in trespass to try title by Perkins, based upon his foreclosure of the second lien note and purchase of the property at the trustee's sale. Plaintiffs joined issue thereupon and sought to have set aside and declared void the trustee's sale and the removal of cloud cast thereby on their title, all through credit upon the second lien note of the damages to which they were entitled to receive from the McDonnell Company. Claim for such credit was based upon the contention that the trustee's sale was unauthorized as founded upon the false premise that installments upon the note were past due and unpaid when in fact they were entitled to an amount in damages of and from the McDonnell Company because of its fraud, and that since Perkins never became a "holder in due course" of the note the plaintiffs were entitled to credit thereon to the extent of such amount in damages despite the transfer, just as they would have been entitled had the note still been in the hands of the McDonnell Company.

Upon a trial before the jury, the plaintiffs were successful. They obtained a judgment for actual and exemplary damages as against the McDonnell Company and McDonnell, individually,—a removal of the cloud cast upon their title by the trustee's sale,—and cancellation of the second lien note through credit thereon by reason of the judgment awarded against the McDonnell Company in an amount greater than said balance. Only as applied to the claim for damages against Perkins did plaintiffs fail to obtain what they sought, and of this they do not complain.

From this judgment the instant appeal has been brought by all of the aforesaid defendants, hereinafter termed appellants where spoken of collectively.

Judgment affirmed.

■ We have concluded from an examination of the record that there was a total absence of evidence to establish that Perkins was a "holder in due course" of the second lien note, if and in the event it was properly determined that the McDonnell Company's title thereto was "defective" in that receipt of it from the plaintiffs was the result of fraud chargeable to said Company. If the Company's title was "defective" within the meaning of the law, then the "burden of proof" was upon Perkins to establish that he was a "holder in due course" by introducing evidence and obtaining findings substantiating such claim through a showing that he had no notice of any infirmity in the note through an asserted defense thereto available to the plaintiffs. There being no evidence in the record upon the matter, any defense which would have been good against a suit thereon by the McDonnell Company at the time of its transfer (whether or not the plaintiffs were then aware of such defense) would likewise be good against the note in Perkins' hands. In other words, Perkins cannot avoid liability because he failed to carry the "burden of proof" and establish that he was a "holder in due course" and the presumption of law would be that he could not establish such.

■ Under V.A.T.S., Title 98, "Negotiable Instruments Act", Secs. 52 to 59, inclusive, under Art. 5935, "Rights of the holder", it is particularly important to notice Secs. 52, subd. 4, 55 and 59. By so doing, it becomes clear that Perkins' failure of proof requires that we treat him as other than a "holder in due course" and that plaintiffs' claim or defense, if good against the McDonnell Company had the note remained in its hands, is good against Perkins for identical reasons. The reason for the requirement of such rule of law is that fraud in the inception of a negotiable instrument raises a presumption that the party to the fraud, who formerly held the paper and who is precluded from recovery thereof himself, has placed it in the hands of another to sue on for him. See Industrial Acceptance Corporation v. Corey, Tex.Com.

App., 1930, 29 S.W.2d 978, and Prouty **v.** Musquiz, 1900, 94 Tex. 87, 58 S.W. 721, 996.

Having determined that the plaintiffs' judgment as applied to Perkins on the second lien note was proper if and in the event they actually had a good defense to a claim under its provisions had the claim been made by the original payee, we proceed to determine whether the plaintiffs have established a case as against the McDonnell Company which would have precluded said Company from recovering on the second lien note had it remained in its hands. (In view of the findings of the jury, plaintiffs have established such if it was properly plead and proved.) At the same time we proceed to determine whether plaintiffs have established their cause of action for damages as it obtains against Mr. McDonnell, individually, the McDonnell Company, and against Mr. Perkins. (In view of the jury verdict, it likewise appears that plaintiffs did establish their cause of action for actual and exemplary damages as against the McDonnell Company and McDonnell, individually.)

■ The foundation of the entire judgment lies in the allegations of the plaintiffs, proofs introduced and jury findings made on the actionable fraud of McDonnell in wilfully representing to the plaintiffs that the property ultimately purchased was not subject to flooding. There was no allegation and no proof that Perkins was connected with this representation. There was allegation connecting Perkins with a further representation, also made the basis of plaintiffs' suit for actionable fraud, to-wit: that plaintiffs' house was inadequately and defectively constructed and that representations inducing its purchase were fraudulently made, etc. However, there was no evidence in the record supported by any jury findings which established damages in any amount because thereof. The plaintiffs not having obtained any finding which showed they sustained any damage by reason of said representation, if any, and in this court making no claim by way of cross-

appeal because of the denial of any issues by which the jury might have found an amount in damages as the result thereof, we believe we should disregard matters relative to the way in which the house was constructed and the representations, if any, made with reference thereto. Such answers as were made to issues having any possible bearing upon representations other than those relating to the matter of flooding could not have supported the judgment, even with certain benefits conferred upon the plaintiffs under the authority of Texas Rules of Civil Procedure, rule 279, for no amount in damages was found by the jury. Damages, or the amount thereof, could not be considered to have been the subject of an implied finding.

■ As heretofore mentioned, the plaintiffs' case against McDonnell, individually, the McDonnell Company, and against the note in Perkins' hands was established under pleadings in respect to the matter of the property being in an area subject to floods and flooding, coupled with representation that such was not a fact. The jury found that Mr. McDonnell, acting in the scope and course of his agency for the McDonnell Company, with intent to deceive, —knowingly made a false statement to plaintiffs that the property in question was not subject to flooding for the purpose of inducing them to purchase the same; that said representation was believed and relied upon by the plaintiffs when they entered into the contract to purchase the property, and that the representation aforesaid was a material inducement for their act in executing such contract. In respect to the note and Mr. Perkins, plaintiffs plead that by reason of the fraud perpetrated upon them in the inducement of the contract, and their execution and delivery pursuant thereto of the second lien note, that Perkins, as the owner of the note, took the same subject to the defense available to plaintiffs because of the fraud. As applied to the second lien note, we consider this to constitute sufficient pleading that Perkins was not a "holder in due course".

In the points of error, all appellants contend that there was "no evidence" that the statement, if any, made by McDonnell to plaintiffs regarding the representations upon flooding or exposure to flood, was made for the purpose of inducing the plaintiffs to purchase *the property involved in this case*. Additionally, it is contended that there was an insufficiency of evidence to support the jury finding that such was the case, and/or that the finding was against the great weight and preponderance of the evidence. In this connection, it is to be remembered that the plaintiffs first contracted to purchase one house in the area and later the first contract was canceled and the second contract entered into to buy the property involved. There was no representation upon the matter of flooding or floods in any area or as to any property in the time interval between the execution of the first contract and the execution and consummation of the second and material contract.

The appellants all furthermore contend that the evidence was insufficient to support the jury findings that a statement was made to plaintiffs by McDonnell that the property would not flood, etc., and that McDonnell knew such statement was false,—and that the findings were against the greater weight and preponderance of the evidence.

Said contentions will be considered together. One "key" to the contentions made in the points of error lies in the fact that plaintiffs alleged that McDonnell represented to them "that this property (the property purchased) was not subject to flooding and had never flooded". Plaintiff's wife testified that she personally asked McDonnell "if the area down there (Sunset Acres) would flood, and he said, 'No, that it would not.'" Plaintiff, himself, testified at one point that McDonnell's statement was that "the houses in that area (Sunset Acres) would not flood", although a part of the statement was the language of plaintiffs' attorney in the framing of a question to which the witness responded there was no objection because thereof. At an earlier point plaintiff had testified that "My wife

asked him, point blank, in my presence, if the property (here the subject was the specific lot purchased) would flood and he (McDonnell) said it would not." It is to be remembered that the statement in question, foregoing any determination of exactly how or whether it could be said to have been limited (and we have hereinafter held it was not limited), was made before the plaintiffs contracted to purchase the first property aforementioned and that there was no subsequent representation upon the matter of whether any area or specific property would flood or had flooded. It is furthermore to be noted in the record that the attorney for all the appellants, while cross-examining the plaintiff, established that all of the area in Sunset Acres was generally on about the same elevation, where there would be a variation in elevation of only a few feet. Also to be noted from the record is the testimony of the witness for the plaintiffs, I. E. Nowlin, formerly with the Department of Public Works for the City of Fort Worth, who stated that he had knowledge about the flood history of the area which later was subdivided as Sunset Acres and that he had personally observed flood waters over a portion thereof in 1942. Further, the witness testified that in 1955 he talked to McDonnell about the area in question and that he told McDonnell "that the property had been under flood waters and that it could happen again."

We consider such testimony to constitute specific evidence and full, clear and satisfactory proof requisite to cases of fraud. That the evidence placed in the record through said testimony was contradicted by the evidence of other persons (primarily by that of Mr. McDonnell) does not change its character or reduce its efficacy below that requisite under the law in such cases. We furthermore are of the opinion that the evidence should be treated as supporting and in conformity with the pleadings in the case. Proper construction of the testimony would be that the exposure to flooding, or the danger from a flood, applied to the en-

tire Sunset Acres Subdivision, in which was located both the first premises contracted to be purchased as well as that purchased. That being true, the property ultimately purchased was a component part of the whole of an area as to which the representation was made by McDonnell. In such an instance proof as to the representation made concerning the area would render it unnecessary to make further proof of the same character relative to a specific lot therein for proof of the former likewise proves the latter. Furthermore, we are of the opinion that the question would properly be one for the jury as to whether the plaintiffs' subsequent purchase of any lot within the area so represented was induced as the result of such representation, and that the same thing would be true (under the state of facts in this case) upon the question of whether the representation was made for the purpose of inducing any subsequent purchase. We likewise here take occasion to express our opinion that the evidence supports the jury findings that McDonnell knew the representation to be false at the time it was made, and that it was made with intent to deceive. We furthermore are of the opinion that no material jury finding was against the weight and preponderance of the evidence.

■ After the special issues in answer to which the jury found McDonnell guilty of wilful actionable fraud, there was an issue submitted inquiring of the jury whether exemplary damages should be assessed against McDonnell. The jury found in the affirmative. Perhaps, in view of the questions elsewhere, such issue should not have been submitted, but the error, if any, could not have harmed any of the appellants. Absent some showing of extraneous prejudice, the submission of a question of law is harmless; if it is answered as the court should have decided, it can hardly damage; if it is answered to the contrary, the finding would be immaterial and hence should be ignored. McDonald, Texas Civil Practice, p. 1169, "Jury Trial: Charge", sec. 12.37, "Construction of Charge: Harmless

Error". Conditioned upon the affirmative answer aforesaid, the jury was asked to assess an amount in exemplary damages against McDonnell, which it did. The judgment entered in the case assessed like damages against the McDonnell Company, but no complaint thereof is made on the appeal.

■ A point of error contends that the entry of judgment against Mr. McDonnell, individually, was erroneous in view of the fact that plaintiffs had not alleged that they were in any kind of contractual relationship with him individually which could have been breached. Since the evidence and jury findings convicted McDonnell of having wilfully made the representation in question, he is made liable by the statutory language, as follows: "All persons making the false representations or promises * . * * shall be jointly and severally liable in actual damages, and in addition thereto, all persons wilfully making such false representations * * * shall be liable in exemplary damages * * *." V.A.T.S., Title 65, "Frauds and Fraudulent Conveyances", Art. 4004, "Actionable fraud".

■ In a final group of points of error it is contended that the trial court erred in allowing into evidence some photographs taken after the flood damage, which purported to demonstrate that prior to the time of the flood the construction of the house in question was defective. If the photographs be properly considered as material to our disposition, it is to be noted that the jury was not mislead and that there was evidence which clarified the situation, and, as applied to the scenes portrayed by the pictures, operated to change the pictures themselves into other pictures which did effectively portray the actual conditions obtaining at the time actually in question, towit: before the flood. The photographs thereby became admissible. The principle of law stated is from the case of Driver v. Worth Const. Co., Tex.Civ.App. Fort Worth 1953, 264 S.W.2d 174, 184, it having been expressly approved in an opinion written

upon appeal of the case at 154 Tex. 66, 273 S.W.2d 603.

Other matters complained of relative to admitting improper evidence before the jury constitute instances where the appellants have failed to demonstrate that such amounted to errors which were reasonably calculated to cause and probably did cause the jury to return a verdict other than that which it would have returned had the evidence been excluded. In such instances error, if any, is to be deemed harmless. T.R.C.P. 434.

Judgment is affirmed.